FILED
8/16/19 12:57 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 18-21501-GLT |
| JOHN E. BARRETT, JR. and<br>SARAH E. RAMIREZ, | Chapter 13 |
| *Debtors.* | |
| DONA BARRETT, | |
| *Movant,* | Related to Dkt. Nos. 36, 39, 62, 76, 92, & 94 |
| v. | |
| JOHN E. BARRETT, JR., SARAH E.<br>RAMIREZ, and RONDA J. WINNECOUR, | |
| *Respondents.* | |

| | |
|---|---|
| Mary Bower Sheats<br>Bridgeville, PA<br>Attorney for Movant | Dai Rosenblum<br>Butler, PA<br>Attorney for Respondents |

## **MEMORANDUM OPINION**

Dona Barrett finds herself at odds with her former husband, John Barrett, in a fight over marital assets that has now spilled into the bankruptcy court. Dona filed a *Motion for Relief from Stay* (hereinafter, the "Motion") seeking the ability to return to state court to compel the release of proceeds from the liquidation of John's business interests.[1] The proceeds were held in a lawyer trust fund account for several years when John and his current wife, Sarah Ramirez,

---

[1] Dkt. No. 36.

1

commenced these bankruptcy proceedings.[2] John opposes relief on the grounds that Dona holds only a dischargeable claim for equitable distribution. After considering the record and for the reasons stated herein, the Court finds the *Motion* to be well taken and will grant stay relief, affording Dona the ability to enforce her rights under applicable non-bankruptcy law.

**I.    BACKGROUND**

The undisputed factual record is contained within the *Statement of Stipulated Facts* which was previously filed with the Court and is incorporated herein.[3] The Court will only repeat those facts necessary to explain its opinion.

On September 4, 2014, the Court of Common Pleas of Mahoning County, Ohio (the "State Court") entered a Judgment Order (the "Divorce Order") granting John and Dona a divorce.[4] The *Divorce Order* also incorporated and effectuated the terms of a separation agreement which provided for an equitable distribution of their property.[5] Among other provisions, the *Divorce Order* required that John remit to Dona one-half of the proceeds he received from a buyout of his partnership interests in two entities, Ankle and Foot Care Centers ("AFCC") and Stark Real Estate LLC ("Stark").[6]

---

[2]    As the caption reflects, Sarah Ramirez is also both a respondent to the present *Motion* as well as a co-debtor in the bankruptcy case. While the Court will refer to John individually, nothing in this Opinion should be read to exclude Sarah from its holdings.

[3]    Dkt. No. 68.

[4]    Id. at ¶ 7.

[5]    Id.

[6]    Id.

John's counsel, Attorney David Engler, was directed to hold John's AFCC buyout proceeds under an escrow arrangement established at Dona's request pursuant to a July 29, 2015 Order of the State Court Magistrate Judge:

> The Court finds that [John] should be ordered to place any funds he receives from Ankle and Foot Care Centers in escrow pending a resolution of the issues raised in the Motion to Show Cause  Plaintiff/John Barrett received a buyout installment of approximately $13,233.00 from Ankle and Foot Care Centers in January 2015, and paid none of this installment to [Dona] even though he was apparently required to do so under the terms of the Judgment Entry of Divorce.  Defendant/Dona Barrett has a valid concern regarding her ability to collect the amount to which she is entitled from [John] if [John] is permitted unfettered use of buyout funds during pendency.
> 
> \*   \*   \*
> 
> Plaintiff/John Barrett is ordered to place in escrow any and all funds he receives from Ankle and Foot Care Centers for buyout of his partnership interest with Attorney David Engler pending a resolution of the issues raised in the Motion to Show Cause.  Plaintiff/John Barrett shall turn these funds over to Attorney Engler as soon as he receives them, and Attorney Engler shall keep the funds in his IOLTA trust account until directed to release them by this Court.[7]

By January 2016, John received full payment of his partnership buyouts from both AFCC and Stark.[8]  He deposited funds totaling $126,134.16 with Attorney Engler, to be held in the lawyer's IOLTA account (collectively, the "Engler Funds").[9]  The Engler Funds included

---

[7]   See id. at ¶ 9; Dkt. No. 78.  Although the July 29, 2015 Order was not attached to the stipulated facts, it was appended as a supplement to Dona's brief without objection as to its authenticity.  Moreover, both parties have cited provisions from the July 29, 2015 Order and it was referenced several times in the State Court's January 28, 2016 Order.  Dkt. No. 68 at Ex. C, p. 7 at ¶ 4 ("By a Magistrate's Order filed July 29, 2015, Plaintiff/John Barrett was ordered to place in escrow any and all funds he receives from AFCC for buyout of his partnership interest with Attorney Engler to be held until further Order of this Court"); p. 13 at ¶ 2 ("Plaintiff/John Barrett was ordered to place in escrow with Attorney Engler the third installment of his AFCC buyout, which is expected to be in the amount of $81,538.91.")

[8]   Dkt. No. 68 at ¶ 8.

[9]   Id. at ¶¶ 16–18.

3

$72,538.91 from the AFCC buyout and $44,945 from the Stark buyout, representing the one-half interest awarded to Dona by the *Divorce Order*.[10]

On January 28, 2016, the State Court entered an Order finding John in contempt of court for, among other things, "failing to pay Defendant/Dona Barrett her share of the second installment of buyout funds from [AFCC.]"[11] As a sanction for his contempt, John was sentenced to 30 days in the county justice center, but the sentence was suspended pending his strict compliance with certain requirements, including the payment of $72,538.91 from the AFCC proceeds to Dona.[12] Alternatively, John was ordered to instruct Attorney Engler to release $72,538.91 from the escrowed funds to Dona.[13]

In March 2016, Dona obtained documents via subpoena revealing that John had already received an additional $89,890 from the buyout of his interest in Stark.[14] It appears that she was previously unaware these funds were paid and deposited with Attorney Engler.[15] Dona thereafter filed a motion in the State Court seeking to hold John in contempt due to his failure to relinquish one-half of the $89,890 Stark distribution as required by the *Divorce Order*.[16]

---

[10]   Id. at ¶¶ 17–18.

[11]   Dkt. No. 68 at Ex. C, p. 12. John was also found in contempt for his failure to repay a $50,000 unsecured Key Bank business loan and a $9,252.85 Key Bank Visa debt. Id. at ¶ 9. The disposition of these obligations was not briefed, and they are not presently under consideration by the Court. Only the funds held in escrow, first by Attorney Engler and now by the chapter 13 trustee (as discussed below), are currently at issue. Nothing in this Opinion should be deemed a determination as to the dischargeability of the Key Bank obligations set forth in Dona's *Adversary Complaint*. See n. 29, infra.

[12]   Id. Paragraph 1(A) of the State Court's January 28, 2016 Order directs John to pay Dona $71,538.91 from the AFCC buyout proceeds, while Paragraph 1(D) directs him to pay her an additional $1,000 in attorney's fees. The parties concede that the portion of the AFCC buyout in dispute amounts to $72,538.91. Id. at ¶ 17.

[13]   Id. at Ex. C, p. 13.

[14]   Id. at ¶ 10.

[15]   The Court notes that by January 2016, Dona was alerted to John's receipt of his Stark buyout, though not the actual amount. Id. at Ex. B.

[16]   Id. at ¶ 11.

4

In lieu of directing the release of funds held by Attorney Engler, John appealed the State Court's January 2016 ruling.[17] The Court of Appeals affirmed the State Court's ruling in September of 2017, prompting John to appeal again.[18] The appeal concluded in March 2018 when the Ohio Supreme Court refused to consider his case.[19] On April 17, 2018, John commenced the present bankruptcy case, thereby staying any further proceedings in the State Court.[20]

Dona now seeks stay relief to enforce her rights to the Engler Funds under the existing State Court Orders.[21] The Court has since required the funds to be deposited with the chapter 13 trustee pending final disposition of these matters.[22] The ownership of, and entitlement to, these funds is now the dispositive matter presented by the *Motion*.

Dona contends that she holds a non-dischargeable property interest in the Engler Funds.[23] She also maintains that, under Ohio law, John holds only bare legal title to the funds because they were placed in Attorney Engler's IOLTA account following the entry of the *Divorce Order* and are held in trust for her as their equitable owner. According to Dona, John's ownership

---

[17]    Id. at ¶ 12. John allegedly posted a supersedeas bond pending his appeal, which Dona claims should be payable to her because John's appeal was unsuccessful. Dkt. No. 94 at pp. 6, 9. The bond amount was included in Dona's proof of claim. Dkt. No. 68 at ¶ 19. The stipulated facts and the parties' briefs were devoid of any significant discussion of the bond, thereby preventing the Court from making any determination as to their respective rights in this potential funding source. In light of today's ruling, it is unnecessary for the Court to require further development of the issue.

[18]    Dkt. No. 68, Ex. F at p. 2.

[19]    Dkt. No. 68 at ¶ 12.

[20]    Id. at ¶¶ 14–15.

[21]    The *Motion* sought additional relief, but the parties have since narrowed the issues currently under consideration by stipulation. See n. 24, infra.

[22]    Dkt. No. 59.

[23]    See Dkt. No. 76.

5

interest in the Engler Funds extends only so far as his obligation to turn them over to her.[24]

John does "not contest the validity of the state court determination."[25] He instead seeks to characterize the *Divorce Order* as having created a normal equitable distribution obligation, which is dischargeable in a chapter 13 bankruptcy.[26] John also points to language in the Magistrate's Order stating that "[t]he Court recognizes that each party's rightful share of these sale proceeds is yet to be determined" as evidence that the Engler Funds were not held for the equitable benefit of Dona, and therefore should be considered property of the estate.[27]

The parties submitted briefs in support of their respective positions.[28] Notwithstanding the multiplicity of issues and legal proceedings arising out of the same set of

---

[24]  Dona also contends that any further litigation respecting the ownership of the Engler Funds would amount to a relitigation of the State Court's *Divorce Order*, thereby violating the Rooker-Feldman Doctrine. Id.  As no determination is being made respecting the validity of the *Divorce Order* itself, the Court need not address this issue.

[25]  Dkt. No. 92 at p. 4.

[26]  In a footnote, John echoes a comment made by his counsel at the October 10, 2018 hearing by pointing out that "pension funds are clearly excluded from the bankruptcy estate by 11 U.S.C. § 541(c)(2)." Id. at n. 2. For this reason, John contends the case law cited by Dona is distinguishable because each case focused solely on retirement funds.

[27]  Id. at p. 5. This line was taken out of context, as it was not made in relation to the Engler Funds, but to the proceeds of a sale of John and Dona's shared marital residence as reimbursement for medical expenses. There is nothing in the quoted Order questioning the finding that the Engler Funds are definite amounts fixed and owing from John to Dona pursuant to the *Divorce Order* and the July 29, 2015 Magistrate's Order.

[28]  Dkt. Nos. 76, 92, and 94.

6

operative facts,[29] the Court will confine itself to a determination of the issues presented in the stipulated facts and briefs as agreed by the parties at a prior hearing on this matter.[30]

## II.     JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## III.    DISCUSSION

The inquiry into the proper disposition of the Engler Funds must begin with a recitation of what constitutes property of the bankruptcy estate.  The portion of the Bankruptcy Code dealing with the contents of the estate is 11 U.S.C. § 541.  Section 541(d) of the Code provides that

> [p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.[31]

---

[29] Dona filed an adversary proceeding on August 10, 2018, which sought to both have this Court enter an order directing Attorney Engler to turn funds over to Dona, as well as deny John a chapter 13 discharge because his debts exceed the allowable limits for chapter 13.  See Barrett v. Barrett, Adv. No. 18-02145, at Dkt. No. 1. John filed an *Objection to Claim of Dona J. Barrett* on September 24, 2018, which sought to have Dona's Proof of Claim treated only as a general unsecured debt in an amount to be determined by the Court.  See Case No. 18-21501 at Dkt. No. 53. John also initiated a second adversary proceeding for turnover of property. See Adv. No. 19-02092.

[30] The Court will make no ruling here with respect to Dona's interest in John's retirement accounts.  At the October 10, 2018 hearing, Dona's counsel stated that she would not be pursuing this claim for the time being, and the issue was not addressed in the parties' briefs.

[31] 11 U.S.C. § 541(d).

7

"State law determines the nature of property rights when considering whether something constitutes bankruptcy estate property under § 541(a)."[32] However, "while the nature and extent of the debtor's [property] interest are determined by state law, once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate."[33]

It follows, then, that the Court must determine how the Engler Funds are treated under state property law before deciding whether they constitute part of John's bankruptcy estate. If they are property of the estate, then Dona's *Motion* should be denied, as the automatic stay is properly preventing her pursuit of estate assets. If they are not, then the *Motion* should be granted and Dona should be permitted to return to the State Court to pursue her available remedies. Of course, before it may do so, the Court must first determine *which* state law applies to defining the underlying property interest.

"When bankruptcy litigation involves a dispute arising from federal substantive law . . . federal common law principles typically will govern" a determination of which state law should be applied.[34] Federal choice of law rules require applying "the law of the jurisdiction with the most significant relationship to the action."[35] Dona is currently a resident of Youngstown, Ohio.[36] Although John now resides in Lawrence County, Pennsylvania, both parties lived in Ohio prior to the entry of the *Divorce Order*.[37] The *Divorce Order* itself was entered by the Court of

---

[32] Walsh v. Burgeson (In re Burgeson), 504 B.R. 800, 805–06 (Bankr. W.D. Pa. 2014); see Butner v. U.S., 440 U.S. 48 (1979).

[33] XL/Datacomp v. Wilson (In re Omegas Grp., Inc.), 16 F.3d 1443, 1450 (6th Cir. 1994) (citations and quotations omitted).

[34] Monarch Capital Corp. v. Bath (In re Bath), 442 B.R. 377, 390 (Bankr. E.D. Pa. 2010).

[35] Id. at 391.

[36] Dkt. No. 68 at ¶ 4.

[37] Id. at ¶ 5.

8

Common Pleas of Mahoning County, Ohio. Attorney Engler, who previously held the Engler Funds, is also a resident of Ohio.[38] All of the parties relevant to the present action live, or lived, in Ohio, and the order of an Ohio court is at the center of the dispute. The Court accordingly finds that Ohio is the state with the most significant relationship to the present action, and therefore Ohio state law will determine the extent of any property interest that John holds in the Engler Funds.

The Court will first address Dona's request for stay relief as it pertains to the AFCC proceeds. Pursuant to a July 2015 order issued by the State Court Magistrate Judge, John was required to deposit all funds from the liquidation of his AFCC partnership interest into an escrow account with Attorney Engler to be held pending further direction from the State Court.[39] By exercising jurisdiction over this specific *res*, the AFCC proceeds were held *in custodia legis* by virtue of the State Court order.[40] In Ohio, property held *in custodia legis*

> is not subject to attachment . . . . However, after the purpose for which a fund or property has been held is fulfilled and an order has been made determining who is entitled to the fund and ordering payment of it, the fund ceases to be *in custodia legis*. Thereafter, the officer holding the fund holds it as a debtor of the person to whom it is payable.[41]

"The purposes of the law having been fulfilled, the officer thereafter is liable to *the owner of the fund*."[42] John and Attorney Engler were ordered to pay the AFCC proceeds to Dona by the State

---

[38]   Id. at ¶ 6.

[39]   Id. at ¶ 9; Dkt. No. 78.

[40]   A question remains as to whether the funds received from the Stark buyout are deemed to be held in escrow. Although the July 2015 order did not specifically include these proceeds within its mandate, John nevertheless voluntarily deposited the funds with Attorney Engler to be commingled with the other proceeds and held under similar circumstances. On account of its ruling, the Court need not resolve this inquiry today.

[41]   24 Ohio Jur. 3d Creditors' Rights and Remedies § 350 (2019) (citing State ex rel. Boller v. Peffley, 78 Ohio App. 242 (2d Dist. Montgomery Cty. 1946); Pierce v. Fortner, 64 Ohio App. 544 (1st Dist. Butler Cty. 1940); Deutsch v. Harris, 1989 WL 24201 (2d Dist. Montgomery Cty. 1989)).

[42]   Peffley, 78 Ohio App. at 247 (emphasis added).

Court's January 28, 2016 Order.[43] Under Ohio law, this amounted to a determination by court order that Dona was the rightful owner of the AFCC funds.

Thus, upon entry of the State Court's January 28, 2016 Order directing Attorney Engler and John to pay Dona the AFCC funds, those funds ceased to be *in custodia legis*—instead, Attorney Engler held bare legal title for the sole purpose of conveying the funds to Dona. With a determination having been made that Dona was the rightful owner of the AFCC funds, John was necessarily divested of any equitable interest that could have passed to the bankruptcy estate. Under 11 U.S.C. § 541(d), property to which a bankruptcy debtor holds only bare legal title becomes property of the estate only to the extent of that title. The State Court's orders of July 29, 2015 and January 28, 2016 clearly divested him of any equitable ownership interest by their own terms, and the AFCC funds therefore never became a part of his bankruptcy estate.

The Court will now turn to the Stark funds and the effect of the *Divorce Order*. Whether the equitable distribution of property pursuant to a separation agreement gives a non-debtor spouse a claim against the estate or a property interest in the award has been a matter of debate.[44] Under the "debt" theory, the division of marital property creates nothing more than a claim held by the non-debtor spouse in the amount of the distribution which could be discharged in bankruptcy.[45] This is in contrast to the "property interest" theory, which holds that a "judgment create[s] in the non-debtor [spouse] a vested property interest. Thus, at the time of filing, [a] debtor

---

[43] Dkt. No. 68 at ¶ 9.

[44] See Property Settlement: Divorce or Property Interest in JUDITH K. FITZGERALD & RAMONA M. ARENA, BANKRUPTCY AND DIVORCE 35 (2d ed. 1994). See also In re Jeffers, 572 B.R. 681, 684–86 (Bankr. N.D. Ohio 2017).

[45] Id. at 36 ("[M]ost courts view property division pursuant to a divorce as creating a debt that may be discharged just like any other unsecured obligation without any special status") (quotations omitted).

[has] no interest in the proceeds that had been awarded to the non-debtor."[46] The emergence of this division was seemingly attributable to varying treatments of property rights under different state laws.[47]

The operative question is which of these two approaches is favored by Ohio state law. If Ohio subscribes to the "debt" theory, then Dona would ostensibly have a dischargeable claim and nothing more. If the "property interest" theory applies, Dona would have been entitled to the AFCC and Stark proceeds from the moment that they were awarded to her in the *Divorce Order*. This court previously considered the characterization of these interests under Ohio law in *In re Debolt*, where Judge Fitzgerald observed that:[48]

> [a]lthough the Ohio domestic relations statute does not use the terminology "creation of separate interests," such a result nevertheless is compatible with the statute and case law. The statute makes a distinction between creation of separate interests and creation of a claim. Ohio case law appears to favor the creation of an ownership interest over creation of a claim.[49]

As Judge Fitzgerald noted, the Ohio Domestic Relations Statute appears to separately contemplate "property interests" and "claims."[50] Section 3105.171(E)(2) of the the Ohio Code, which governs divisions of property, provides that "the Court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the Court determines that a division of marital property in kind or in money would be impracticable or burdensome."[51] This

---

[46] Id.

[47] See id. at 42.

[48] Debolt v. Comerica Bank (In re Debolt), 177 B.R. 31, 36 (Bankr. W.D. Pa. 1994).

[49] Id. at 36 (internal citations omitted).

[50] Id.

[51] Ohio Rev. Code § 3105.171 (E)(2).

is followed with multiple guidelines for how the Court is to conduct either a "division of marital property" or a "distributive award."[52]

The fact that the statute provides for "distributive awards" when a division of property is impracticable means that a Court may order one spouse to pay the other a set amount in the interests of effecting an equitable distribution—that is, one spouse becomes the debtor of the other. This is contrasted with a division of property, wherein there is no suggestion that one spouse must pay the other anything; instead, the implication is that the court is delineating separate property rights at the time of the division. The difference is underlined by the fact that the statute takes into consideration *both* marital and separate property when making a property division, but makes no substantive distinction about their eligibility for division.[53] A "distributive award," however, is by definition limited to "payment . . . made from separate property or income."[54] The use of language such as "in lieu of a division of marital property" further suggests that the creation of a debt between spouses should be the exception rather than the rule, with the distributive award being used as a way to balance the allocation of those rights. The survey of Ohio case law provided in *Debolt* highlighted the Ohio Supreme Court's "goal of disentangling the economic relationship of the parties in divorce cases so that the rights and obligations of each vis-à-vis the other are

---

[52]  Ohio Rev. Code § 3105.171 (F).

[53]  Ohio Rev. Code § 3105.171 (B) ("[T]he court shall divide the marital and separate property equitably between the spouses . . . . For purposes of this section, the court has jurisdiction over all property . . . in which one or both spouses have an interest.").

[54]  Ohio Rev. Code § 3105.171 (A)(1). The definition also requires that distributive awards be made "in a lump sum or over time, in fixed amounts."

extinguished," which Judge Fitzgerald noted was "best accomplished through an award of a separate interest rather than a claim against [a] [d]ebtor's interest."[55]

While *Debolt* is a somewhat older case, nothing in the subsequent amendments to the Code have affected its rationale. The addition of 11 U.S.C. § 523(a)(15) to the Code in 1994 provided the ability for debtors in chapter 13 bankruptcy to discharge "any debt . . . to a spouse [or] former spouse . . . and not [in the nature of support] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement [or] divorce decree."[56] The question of whether this new treatment of "debts" incurred in connection with a separation agreement altered the property-interest theory under Ohio law was recently examined by Judge Koschik in *In re Jeffers*.[57] Judge Koschik shrewdly recognized that the answer to that turned on another question: "what is a 'debt'?"[58] In order for that question to have been altered by the addition of 11 U.S.C. § 523(a)(15), "the underlying property or domestic relations law of Ohio would need to change, or Congress would need to make a rule superseding it for the purposes of defining property of the estate and of the debtor."[59] In finding that this was not the case, Judge Koschik reaffirmed that divisions in marital property still effect separate property interests under Ohio law.

---

[55] Debolt, 177 B.R. at 37 (quoting Hoyt v. Hoyt, 559 N.E.2d 1292, 1298–00 (Ohio 1990); see also Zimmie v. Zimmie, 464 N.E.2d 142, 146 (Ohio 1984) ("Once the division of property is fixed by the court, both spouses are legally entitled to the share respectively allotted to them.")).

[56] 11 U.S.C. § 523(a)(15).

[57] 572 B.R. 681 (Bankr. N.D. Ohio 2017).

[58] Id. at 689.

[59] Id.

13

John contends that the above Ohio case law applies only to interests held in retirement funds pursuant to equitable distributions, and not to awards of other assets, such as the Engler Funds. While it is true that *Jeffers* and *Debolt* both concerned the determination of property rights in retirement accounts following the entry of equitable distribution orders, and even cite to an Ohio Supreme Court case involving retirement accounts,[60] their holdings with respect to state law property rights are not based on that fact. Indeed, these cases largely relied upon Ohio law's differing treatment of "distributive awards" and "divisions of marital property" in divorce.[61] Put simply, their findings stem from the more fundamental distinction in Ohio law between creating a property interest and a debt.[62]

The *Divorce Order* therefore gave Dona a separate, one-half property interest in the AFCC and Stark proceeds at the time it was entered, as it was clearly a division of marital property rather than a distributive award. The Separation Agreement incorporated into the *Divorce Order* specifically identifies John's AFCC and Stark interests and awards half of their buyout proceeds to Dona.[63] The fact that the *Divorce Order* refrains from stating exactly how much these proceeds will amount to only bolsters the conclusion that it was intended to affect a division of property rather than a distributive award. This was not a debt that was owed by John to Dona; it was a directive for John to transfer Dona's own property to her. The above discussion of the Ohio statute and its analysis in *Debolt* make that clear.

---

[60] Erb v. Erb, 661 N.E.2d 175, 179 (Ohio 1996) (citing Hoyt v. Hoyt, 559 N.E.2d 1292 (Ohio 1990)).

[61] See Jeffers, 572 B.R. at 687; Debolt, 177 B.R. at 36–37; Erb, 661 N.E.2d at 179.

[62] See Ohio Rev. Code § 3105.171 (E)(2), (F) (distinguishing between the allowance of a distributive award or a division of marital property).

[63] Dkt. No. 36 at Ex. A, ¶ F.

Given that Ohio state law treats the division of property pursuant to an equitable distribution as creating a property interest, and not a debt, it follows that the Code's treatment of dischargeability of "debts" in connection with a separation agreement is not relevant to a property interest created by separation in Ohio. As the Court is obligated to apply the state law of Ohio in this case, it therefore finds that the Engler Funds are not property of the estate under 11 U.S.C. § 541(d), as their award to Dona created a distinct equitable ownership interest not shared with John. The extent of any ownership interest held by John goes only so far as his obligation to turn them over to Dona. This applies equally to the AFCC and Stark funds, despite the alternative theory of reaching this conclusion with respect to the AFCC funds discussed above.

Based upon the foregoing discussion, the Court finds that sufficient cause exists under 11 U.S.C. § 362(d)(1) to grant Dona relief from the stay to pursue any remedies necessary to recover her interest in the Engler Funds. An appropriate Order will issue.

Dated: August 16, 2019

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtor
Dai Rosenblum, Esq.
Mary Bower Sheats, Esq.
Ronda J. Winnecour, Esq.
Office of the U.S. Trustee